IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANEEN A. CHINN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ELITE RECOVERY SERVICES, INC., ) <br> ) <br> Defendant. ) <br> ) | Case No.: 08 CV 2824 <br><br> Judge Coar <br> Magistrate Judge Ashman |

**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)**

Defendant, Elite Recovery Services, Inc., ("Elite") by and through its attorneys, David M. Schultz and Todd P. Stelter, and for its Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint, states as follows:

1. Plaintiff's First Amended Complaint alleges that Elite violated the Fair Debt Collection Practices Act, 15 U.S.C. §§1692e, 1692e(2), 1692e(5), 1692e(10) and 1692f ("FDCPA"), Illinois Collection Agency Act, 225 ILC 425/8b ("ICAA") and Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA") by filing a lawsuit for collection of a debt (a copy of the lawsuit is attached hereto as Exhibit A) from her without having an assignment that complies with Section 8b of the ICAA and without attaching the assignment to the collection complaint. (Ex. A).

2. Plaintiff's argument fails for several reasons which are discussed further in defendant's Memorandum of Law in support of its Motion to Dismiss which is filed contemporaneously with this Motion.

6343364v1 7791

WHEREFORE, Elite respectfully requests this court grant its Motion to Dismiss and dismiss plaintiff's first amended complaint with prejudice.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

By: s/Todd P. Stelter

One of the Attorneys for Defendant,
Elite Recovery Services, LLC

David M. Schultz
Todd P. Stelter
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3000

6343364v1 7791

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANEEN A. CHINN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 08 CV 2824 ) |
| ELITE RECOVERY SERVICES, INC., | ) Judge Coar ) Magistrate Judge Ashman ) |
| Defendant. | ) ) ) |

**CERTIFICATE OF SERVICE**

I hereby certify that on August 18, 2008, I electronically filed **MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to the following:

**Dan Edelman**
dedelman@edcombs.com

Respectfully submitted,

By:____s/Todd P. Stelter_____

David M. Schultz
Todd P. Stelter
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street, Ste 300
Chicago, IL 60601
(312) 704-3000

6343364v1 7791

# EXHIBIT A

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

| | | |
|---|---|---|
| ELITE RECOVERY SERVICES S/I/I TO PROVIDIAN NATIONAL BANK | ) ) ) | Case No. Contract |
| Plaintiff, | ) ) ) | Amount Claimed $3,309.92 Plus attorney fees and costs |
| JANEEN A CHINN | ) ) ) | |
| Defendant(s) | ) ) | Return Date: MAY 0 8 2008 |

## VERIFIED COMPLAINT AT LAW

NOW COMES the Plaintiff, ELITE RECOVERY SERVICES S/I/I TO PROVIDIAN NATIONAL BANK, by and through its attorneys, ADLER & ASSOCIATES, LTD., and for its complaint against the Defendant(s), JANEEN A CHINN  , alleges and states as follows:

1. That Plaintiff acquired by purchase assignment from the original credit issuer or its successor the account of Defendant(s) JANEEN A CHINN  , and is now the bona fide holder of this claim.

2. That upon information and belief from the representations of the assignor, at the specific instance and request of the Defendant(s), JANEEN A CHINN  , PROVIDIAN NATIONAL BANK , directly or through a retail merchant , issued to Defendant(s) a certain credit card/revolving charge (open end consumer credit) account.

3. That upon information and belief Defendant(s) made various charges to said account since the date of issuance and, after accounting for payments made, there remains an unpaid and past due balance in the sum of $3,309.92, as set forth in the attached affidavit.

4. That demand for payment has been made upon the Defendant(s) but Defendant(s) has/have failed or refused to pay said remaining balance.

5. That Plaintiff claims reasonable attorneys' fees in the sum of $350.00, as provided for in Exhibit(s).

WHEREFORE, Plaintiff, ELITE RECOVERY SERVICES S/I/I TO PROVIDIAN NATIONAL BANK, prays judgment be entered in its favor and against the Defendant(s), JANEEN A CHINN  , in the amount of $3,309.92, plus applicable attorney fees and costs.

ADLER & ASSOCIATES, LTD.

BY: _____
For the Firm

ADLER & ASSOCIATES, LTD., #00512
ATTORNEYS FOR PLAINTIFF
25 E. WASHINGTON, #500
CHICAGO, IL 60602
312 726-1814
218578



EXHIBIT A

# AFFIDAVIT

STATE OF NEW YORK}

COUNTY OF ERIE}

BEFORE ME, the undersigned Notary Public, authorized by law to administer oaths, personally appeared Richard Corica, who, after being first duly sworn, says:

1. I am a duly authorized officer of Elite Recovery Services Inc., and am authorized to make this oath on behalf of Elite Recovery Services Inc. accordingly.

2. I am over 18 years of age, am competent to testify, and have personal knowledge of the facts set forth herein.

3. In the capacity of my employment, I maintain the books and records of Elite Recovery Services Inc. and have personal knowledge that said records are kept in the ordinary course of business and it is the regular practice to record such transactions on or about the time of occurrence.

4. That at the time of purchase, Providian transmitted certain electronic data pertaining to the particulars of the indebtedness of CHINN, JANEEN A. A true and accurate printout of such relevant electronic data is attached hereto, identified as the "Statement of Account".

5. I have reviewed the books and records of Elite Recovery Services Inc. with respect to the indebtedness of CHINN, JANEEN A (SSN# XXX-XX- 3576) and the books and records of Elite Recovery Services accurately reflect incorporated by reference herein.

6. That Elite Recovery Services Inc. is a bona fide assignee of Providian, the original creditor of the indebtedness of CHINN, JANEEN A set forth above, pursuant to a valid purchase agreement.

7. I affirm that CHINN, JANEEN A is responsible for payment of interest at the applicable state legal interest rate per annum.

8. I affirm that if I was to be called as a witness, I can testify competently as to the facts of the indebtedness of CHINN, JANEEN A.

9. To the best of my knowledge, the defendant is not now on active duty in a branch of the military.

_____
Affiant's Signature

SUBSCRIBED AND SWORN TO before me, a Notary Public, in and for Erie County and New York State, this 16 day of January, 2008.

_____
Notary Public

My Commission Expires:

Ref#: 389631

JILL S. ANDERSON
Notary Public, State of New York
Qualified in Erie County
My Commission Expires July 21, 20 11

218578

```
=================================================================
                    Statement of Account        06-7482
=================================================================
Original Creditor: Providian
=================================================================
Collections Department: 800-780-6165

Mail Payments to:          ERS
                           PO BOX 3474
                           Buffalo, NY 14240-3474

=================================================================

ERS Account Number:              389631
Current Statement date:          1/15/2008
Original Account Number:         4185512900035752
Placement Balance:               $3,309.92
Interest:                        $0

TOTAL AMOUNT DUE:                $3,309.92

=================================================================
```

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

```
=================================================================
              ******Total Amount Due: $3,309.92
=================================================================
```

CHINN, JANEEN A
10457 S PARNELL AVE
389631
CHICAGO, IL 606282433

Elite Recovery Services Inc.
PO BOX 3474
Buffalo, NY 14240-3474

**PROVIDIAN** Financial

Providian National Bank WebCard® VISA
Account Agreement

Please review this document and keep it with your other important papers. This Account Agreement contains the terms which govern your Providian National Bank VISA or MasterCard Account (the "Account"). The Account allows you to make purchases by using your VISA or MasterCard card (the "Card") wherever it is honored and to get cash advances from us or any other participating financial institution and from Automated Teller Machines. Convenience checks may also be provided to you as an additional way to use the Account. In this Agreement, "you" and "your" mean each person for whom we have opened a credit card Account. "We," "our," "ours," and "us" mean Providian National Bank or its assignees, as listed on your billing statement. The Account may be used only for personal, family, household, and charitable purposes, and not for any business or commercial purpose. Any use of this Account shall constitute acceptance of the terms of this Agreement. You and we agree as follows:

**Payments.** You will receive a monthly statement showing your outstanding balance. Payment on this Account is required in U.S. dollars (checks must be payable at a U.S. office of the bank the check is drawn on) for at least the payment due as shown on your statement by the payment due date in accordance with payment instructions on your monthly statement. The back of your statements shows the rules we follow when we post payments. Convenience checks and other checks we issue to you may not be used to make payments on your Account or to make payments on any other account you have with us or our affiliates. The payment due will be: 2% of the new balance shown on your statement plus the amount of any past due payment, and may include the amount by which the new balance exceeds your credit line. However, the payment due will not be less than $15 (unless your new balance is less than $15, in which case the payment due will be the amount of the new balance). If your Account is past due or above the credit line, we may require a higher minimum payment, but we will notify you before doing so. If your payment is more than the payment due, it will be treated as a single payment and none of it will be applied to future payments due. We may accept late or partial payments, or payments marked "paid in full" or marked with other restrictions, without losing our right to collect all amounts owing under this Agreement.

**Finance Charges.** Except as described in the Grace Period for Purchase Balance section of this Agreement, finance charges begin to accrue on a debit when it is included in one of your daily balances and continue until that balance is reduced by a payment or credit. Your Account has the following balances: The Purchase Balance, which consists of your existing Purchase Balance and new purchases you make with your Card and fees for certain optional services; one or more Custom Cash Advance Balances, which consists of balances that you transfer to your Account using balance transfer checks and balances that we transfer for you; and the Cash Advance Balance which consists of all other cash advances and cash advance transaction fees. Any payment amount we receive that exceeds the finance charges and fees then due will ordinarily be applied first to the Balance with the lowest Annual Percentage Rate (APR), until that Balance is zero, and then to the Balance with the next lowest APR, until that Balance is zero, and then to any remaining Balance. We reserve the right to apply payments differently without further notice.

The Purchase, Custom Cash Advance, and Cash Advance Balances are reduced by payments as of the date received, and by credits as of the date posted. Purchases are included in your Purchase Balance as of the date made. Custom cash advances are included in your Custom Cash Advance Balance as follows: funds electronically transmitted to other lenders to transfer balances, as of the date transmitted; checks to transfer balances, as of the date presented to us. Other cash advances are included in your Cash Advance Balance as follows: cash advances from other financial institutions and through Automated Tellers, as of the date made; cash advance checks made payable to you that are identified as cashier's checks and mailed to you at your request, as of seven days after the date we print on the check; all other checks, as of the date presented to us. Other debits are included in your Purchase, Custom Cash Advance, or Cash Advance Balance as of the date posted. Finance charges are added to your Purchase, Custom Cash Advance, and Cash Advance Balances each day and are then posted on the last day of the billing cycle. There is no grace period for custom cash advances or other cash advances.

To figure the daily finance charge for each type of Balance, we start with your previous day's Balance, add all debits and subtract all credits for the current day and multiply the net amount by the applicable daily periodic rate (see following paragraphs). The finance charge for each type of Balance is then added to and included in that day's Balance. We treat a credit balance for any day as zero. We determine the total finance charges on balances for the billing cycle by adding together the finance charges for each type of Balance for each day within the billing cycle. In calculating finance charges, an adjustment will be made for any transaction or payment that would have affected the finance charge calculation in a prior billing cycle had it been posted in that cycle. The applicable daily periodic rate for such a transaction will be the rate in effect for the current billing cycle rather than the rate in effect on the date of the transaction.

Your statement includes an average daily balance for each type of Balance. You can multiply each average daily balance that is not zero by the number of days in the billing cycle and the periodic rate to obtain subtotals, and then add the subtotals together to determine your total finance charges on balances for the billing cycle. If a cash advance transaction fee is charged, that amount is also a finance charge.

The term "Prime Rate" as used in the Agreement means the highest prime rate published in the *Wall Street Journal* on the first business day of the previous calendar month. Any increase or decrease in the Annual Percentage Rate will take effect on the first day of your billing cycle and may result in a slight increase or decrease in the amount of your minimum payment.

The **ANNUAL PERCENTAGE RATE (APR)** for purchases may vary and will be adjusted each billing cycle to 10.24% above Prime Rate, but will in no event be less than 17.99%. Using this formula, the APR for purchases in the October 2000 billing cycle is 19.74%, corresponding to a daily periodic rate of 0.05408%.

The **ANNUAL PERCENTAGE RATE** for cash advances is 19.99%, corresponding to a daily periodic rate of 0.05477%.

If we receive your Account payment late 2 or more times in any 6-month period, on each such occurrence we may increase the APR for purchases up to a maximum of 23.30% (corresponding to a daily periodic rate of 0.06384%), and increase the APR for cash advances and custom cash advances up to a maximum of 23.30% (corresponding to a daily periodic rate of 0.06384%). If after you receive the higher rates your payments are received on time and you meet all other terms of this Agreement for 3 consecutive months, you may contact our Customer Service department and, at your request, we will review your Account for a possible APR reduction.

**Grace Period for Purchase Balance.** New purchases posted to your Account in billing cycles with no previous balance, or when the previous balance was fully paid during the cycle, do not begin to incur a finance charge until the start of the next billing cycle. You will pay no finance charge on such new purchases if you pay the total new balance in full by the payment due date shown on your statement. New purchases posted in any other billing cycle incur a finance charge, and there is no period in which such purchases may be repaid without incurring a finance charge.

**Rebate.** On the last day of each monthly statement period we will credit your Account with 1% of your net purchase transactions posted during the statement period. "Net Purchase Transactions" means Card purchases, less purchase adjustments and purchase credits posted during the period.

**Fees.** We may charge your Account $0 for: each Card you ask us to replace; each returned payment; each check you write on your Account that we return unpaid; each stop payment order or renewal of such an order; each billing cycle within which your Account is delinquent (late charge); and each billing cycle within which your balance exceeds your credit line (overlimit fee), even if your Account is closed. If you request copies of billing statements that were first sent to you more than three months earlier, we may charge a handling fee of $2 for each such copy. If you request that we make a one-time automatic

Continued on reverse) (5846-0698)　4638410001889594

...ur personal checking account, we may charge your credit card account a fee of $4.95 for each request. This fee is a FINANCE CHARGE, regardless of whether funds are available in your personal checking account to make the payment.

...e a transaction fee of 3% (minimum $5), which is a one-time FINANCE CHARGE, on the amount of each cash advance, including cash from ...tions, and ATMs, wire transfers, money orders, lottery tickets, casino gaming chips, and similar transactions.

...u will be in default: if any information you provided us proves to be incomplete or untrue; if you do not comply with any part of this Agreement; ...eath, bankruptcy, or insolvency; if you do not pay other debts when due; if a bankruptcy petition is filed by or against you; or if we believe in good ...ou may not pay or perform your obligations under this Agreement. If you are in default we may, without further demand or notice, cancel your ...ileges, declare your Account balance immediately due and payable, and use any remedy we may have. In the event of your default, the ...ng balance on your Account shall continue to accrue interest at the APR(s) disclosed in the Finance Charges section of this Agreement, even if we ...d suit to collect the amount you owe.

...Line. Your credit line is specified from time to time in a separate notice. Your monthly statements show your credit line and the amount of your ...ble credit. We may increase or decrease your credit line based on information we obtained from you or your credit records. Your available credit is ...lly the difference between your credit line and your Account balance (including transactions made or authorized but not yet posted). If you send us a ...e payment check, we may limit your available credit while we confirm that the check will clear. For certain transactions, available credit may be less. ...will not use your Account for, and we may refuse to honor, any transaction which would cause you to exceed your available credit.

...omise to Pay. You promise to pay us when due all amounts borrowed when you or someone else use your Account (even if the amount charged ...eeds your permission), all other transactions and charges to your Account, and collection costs we incur including, but not limited to, reasonable ...rney's fees and court costs. (If you win the suit, we will pay your reasonable attorney's fees and court costs.)

...anges. After we provide you any notice required by law, we may change any part of this Agreement and add or remove requirements. If a change is ...de to the Finance Charges section of this Agreement, the new finance charge calculation will apply to your entire Account balance from the effective date ...he change. Changes will apply to balances that include items posted to your Account before the date of the change, and will apply whether or not you ...tinue to use the Account.

...reign Exchange/Currency Conversion. If you use your Card for transactions in a currency other than U.S. dollars, the transactions will be converted to ...S. dollars, generally using either a (i) government-mandated rate or (ii) wholesale market rate in effect the day before the transaction is processed, ...reased by three percent (3%). If a credit is subsequently given for a transaction, it will be decreased by the same percentage. The currency conversion ...e used on the conversion date may differ from the rate in effect on the date you used your Card. You agree to accept the converted amount in U.S. ...ollars.

...he Card; Cancellation. You may cancel your credit privileges at any time by notifying us in writing and destroying the Card(s). Upon the Card expiration at ...e end of the month shown on it, we reserve the right not to renew the Card. We may cancel the Card and your credit privileges at any time after 30 days ...otice to you, or without notice if permitted by law. If your Card is cancelled or not renewed, finance charges and other fees will continue to be assessed. ...yments will continue to be due, and all other applicable provisions of this Agreement will remain in effect. If you terminate your credit privileges, or if we ...ncel or do not renew the Card, you may no longer write checks on your Account, and you should destroy any unused checks we have issued to you.

...rsonal Information; Documents. You will provide us at least 10 days notice if you change your name, home or mailing address, telephone numbers, ...ployment or income. Upon our request, you will provide us additional financial information. We reserve the right to obtain information from others, ...uding credit reporting agencies, and to provide your address and information about your Account to others. We may also share information with our ...liates. However, you may write to us at any time instructing us not to share credit information with our affiliates. If you do not fulfill your obligations under ...s Agreement, a negative credit report that may reflect on your credit may be submitted to the credit reporting agencies.

...stomer Service; Unauthorized Use, Loss, or Theft of Checks or the Card. Each Card must be signed on receipt. You are responsible for ...eguarding the Card, your Personal Identification Number ("PIN", which provides access to Automated Teller Machines) and any checks issued to you ...m theft, and keeping your PIN separate from your Card. If you discover or suspect that your Card, PIN, or any unused checks are lost or stolen, or that ...re may be an unauthorized transaction on your Account, you will promptly notify us by calling 1-800-933-7221. So we can immediately act to limit losses ...d liability, you will phone us even though you may also notify us in writing. You will not be liable for unauthorized use occurring before you notify us of a ...s or theft. If you report or we suspect unauthorized use of your Account, we may suspend your credit privileges until we resolve the problem to our ...sfaction or issue you a new Card. If your Card is lost or stolen, you will promptly destroy all checks in your possession. To improve customer service ...d security, you agree that your calls may be monitored or recorded.

...rchant Relations. We will not be liable if any person or Automated Teller Machine refuses to honor the Card or accept your checks, or fails to return the ...rd to you. We have no responsibility for goods and services purchased with the Card or checks except as required by law. (See Special Rule below.) ...rtain benefits that are available with the Account are provided by third-party vendors. We are not responsible for the quality, availability, or results of any ...he services you choose to use.

...op Payment Orders. If you wish to stop payment on a check, you may send us a stop payment order by writing to us at our address for customer service ...ed on your statement. You can make a stop payment order orally by calling the number listed on your statement. When you make a stop payment order ... must provide your Account number and specific information about the check: the exact amount, the date on the check, the name of the party to whom it ...s payable, the name of the person who signed it, and the check number. You will be asked to confirm an oral stop payment order in writing. We may ...regard your oral order if we do not receive a signed written confirmation within two weeks after the oral order, or if we have not received an adequate ...cription of the item so that payment can be stopped. The order will not be effective if the check was paid by us before we had a reasonable opportunity to ... on the order. We may, without liability, disregard a written stop payment order six months after receipt unless it is renewed in writing.

...ndard of Care. Because this Account involves both credit card and check transactions which are processed through separate national systems before ...transactions are consolidated by us, and because not every check and Card slip will be sent to us, transactions in your Account will be processed ...chanically without our necessarily reviewing every item. Our processing system will call our attention to certain items which we will examine. If we ...mine all transactions when you report that your Card or checks have been lost or stolen. We do not intend ordinarily to examine all items, and we will not ...negligent if we do not do so. This rule establishes the standard of ordinary care which we in good faith will exercise in administering your Account. ...cause of our limited review, and because neither your cancelled checks nor Card transaction slips will be returned to you with the monthly statement, you ...uld be careful to enter all checks in your check register or otherwise keep a record of them. You should also save your credit card cash advance and ...chase slips. You agree to check your monthly statements against your record and to notify us immediately of any unauthorized transactions or errors.

...iver of Certain Rights. We may delay or waive enforcement of any provision of this Agreement without losing our right to enforce it or any other ...vision later. You waive: the right to presentment, demand, protest, or notice of dishonor; any applicable statute of limitations; and any right you may ...e to require us to proceed against anyone before we file suit against you.

...plicable Law; Severability; Assignment. No matter where you live, this Agreement and your Account are governed by federal law and by New ...mpshire law. This Agreement is a final expression of the agreement between you and us and may not be contradicted by evidence of any alleged oral ...eement. If any provision of this Agreement is held to be invalid or unenforceable, you and we will consider that provision modified to conform to applicable ... and the rest of the provisions in the Agreement will still be enforceable. At any time after we determine in good faith that any proposed or enacted ...slation, regulatory action, or judicial decision has rendered or may render any material provisions of this Agreement invalid or unenforceable, or impose ... increased tax, reporting requirement, or other burden in connection with any such provision or its enforcement, we may, after at least 30 days notice to ... or without notice if permitted by law, cancel the Card and your Credit privileges. We may transfer or assign our right to all or some of your payments. If

**PROVIDIAN** Financial

...aw requires that you receive notice of such an event to protect the purchaser or assignee, we may give you such notice by filing a financing statement ...he state's Secretary of State.

...ces. Other notices to you shall be effective when deposited in the mail addressed to you at the address shown on our records, unless a longer notice ...d is specified in this Agreement or by law, which period shall start upon mailing. Notice to us shall be mailed to our address for customer service on ...r statement (or other addresses we may specify) and shall be effective when we receive it.

**...UR BILLING RIGHTS – KEEP THIS NOTICE FOR FUTURE USE.** This notice contains important information about your rights and our responsibilities under the Fair ...redit Billing Act.

***Notify Us in Case of Errors or Questions About Your Bill.*** If you think your bill is wrong or if you need more information about any transaction on your ...ill, write us on a separate sheet, at the address listed in the Billing Rights Summary on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information: – Your name and Account number. – The dollar amount of the suspected error. – Describe the error and explain, if you can why you believe there is an error. If you need more information, describe the item you are not sure about.

f you have authorized us to pay your credit card bill automatically from your checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

***Your Rights and Our Responsibilities After We Receive Your Written Notice.*** We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct. After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

f we find that we made a mistake on your bill, you will not have to pay any finance charge related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up the missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due. If you fail to pay the amount we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you question your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is. If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

***Special Rule for Credit Card Purchases.*** If you have a problem with the quality of the property or services that you purchased with our credit card and you have tried in good faith to correct the problem with the merchant, you may not have to pay the remaining amount due on the goods or services. There are two limitations on this right: (a) you must have made the purchase in your home state, or if not within your home state, within 100 miles of your current mailing address; and (b) the purchase price must have been more than $50. These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.